IN THE UNITED STATES DISTRICT COURT
NORTHERN DISRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| R.W. BECKETT CORPORATION | ) | CASE NO. 1:19 CV 00428 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE THOMAS PARKER |
| | ) | |
| v. | ) | **FIREMAN'S FUND INSURANCE** |
| | ) | **COMPANY'S MOTION FOR SUMMARY** |
| FIREMAN'S FUND INSURANCE CO., | ) | **JUDGMENT** |
| et al. | ) | |
| | ) | |
| Defendants | ) | |

Defendant Fireman's Fund Insurance Company ("Fireman's Fund") moves the Court for summary judgment on all claims against it. A Brief in Support of this Motion follows.

                                              Respectfully submitted,

| | |
|---|---|
| | /s/David L. Lester |
| Richard M. Garner (0061734) | David L. Lester (0021914) |
| Collins, Roche, Utley and Garner, LLC | Collins, Roche, Utley and Garner, LLC |
| 655 Metro Place South, Suite 200 | 875 Westpoint Parkway, Suite 500 |
| Dublin, Ohio 43017 | Cleveland, Ohio 44145 |
| Phone: (614) 901-9600 | Direct Dial: (440) 438-3612 |
| Email: rgarner@cruglaw.com | Email: dlester@cruglaw.com |
| | *Attorneys for Defendant* |
| | *Fireman's Fund Insurance Company* |

**Introduction**

This case presents the issue of whether plaintiff R.W. Beckett ("Beckett") can unilaterally increase the defendant insurers' coverage obligations by settling with other primary insurers who had ten years of coverage, and then simply pocket the money and walk away without recourse. Fireman's Fund submits that Beckett cannot do so.

As alleged in the Complaint and discussed more fully below, Beckett is a defendant in numerous underlying asbestos bodily injury lawsuits. During the relevant time, Beckett had primary general liability insurance with several different insurers, loosely referred to as CNA, Fireman's Fund, and Century/ACE. Under this arrangement, Beckett's defense and indemnity costs for the asbestos claims were paid on a pro rata basis based upon the "time on the risk" as follows: 62.69% by CNA, 31.09% by Century/ACE, and 6.22% by Fireman's Fund.[1] Beckett recently settled with CNA and released any claim for coverage under CNA's ten years of insurance, in return for a confidential, but hefty, payment. Beckett then not only refused to contribute to its own defense and indemnity costs, it demanded that Fireman's Fund and Century/ACE actually assume CNA's former 62.69% share of Beckett's defense and indemnity costs.  Controlling legal authority on this issue, however, holds that Beckett cannot increase one insurer's coverage obligation by unilaterally settling with another insurer. Fireman's Fund therefore declined to assume any portion of CNA's share, as did Century/ACE. This lawsuit ensued.

Fireman's Fund is entitled to summary judgment for several reasons. First, Fireman's Fund's policy excludes coverage for injuries arising from exposure to pollution and other toxic

---

[1] These percentages were determined by simply dividing the total number of years of coverage (16 years) by the number of years each insurer provided coverage:  CNA (10 years); Century/ACE (5 years); and Fireman's Fund (1 year).

2

substances. The underlying asbestos claims fall squarely within that exclusion, as to preclude any duty to defend or indemnify Beckett for its asbestos liabilities. While Fireman's Fund did not previously deny coverage on this basis, having been wrongly sued by Beckett, Fireman's Fund now presents this valid defense to Beckett's claims.

Second, if Fireman's Fund provides coverage at all, it is entitled to a credit equal to the full limits of the settled policies before it must make any further payment. This is because Beckett's settlement has eliminated Fireman's Fund's right to contribution from CNA under CNA's ten years of coverage.

Third, since Fireman's Fund has not breached its insurance contract and at the very least its coverage position is reasonably justified it cannot be liable for bad faith as a matter of law.

## **Background**

Since approximately 1998, Beckett has been a party to hundreds of lawsuits in multiple states, in which the plaintiffs seek damages for personal injuries allegedly resulting from exposure to asbestos contained in Beckett's products. (Doc# 1, PageID 6, ¶ 19). During part of the time of the underlying plaintiffs' alleged asbestos exposure, Beckett was insured by several primary insurers (*Id*., ¶ 9-16):[2]

---

[2] According to Beckett, some of its insurers have been acquired by other companies over the years. In this regard, Beckett alleges that: (1) Allianz Global Corporate and Specialty is a successor to Fireman's Fund (*Id*., ¶ 3); (2) ACE Fire Underwriters Insurance Company is a successor to Aetna (*Id.*, ¶ 4); and (3) Century Indemnity Company is a successor to INA Insurance Company of Ohio (*Id.*, ¶ 5). These allegations are not entirely correct, but have been corrected. Fireman's Fund issued the 2/1/80-81 policy, remains an active California corporation, and is the proper party in interest under the subject insurance policy. Allianz has been dismissed, and Fireman's Fund has been substituted. (Doc# 4; Doc# 7). In addition, Beckett sued Century Indemnity Company as alleged successor to INA Insurance Company of Ohio, which issued the 2/1/84-86 policy. (Doc# 1, PageID 5, ¶ 16-17). The correct successor, however, is ACE American Insurance Company, which has been substituted for Century. (Doc# 10; Doc#11). Beckett's primary insurers for December 31, 1970 until January 31, 1980 – Buckeye Union Insurance Company and Continental

| Policy Period | Insurer |
|---|---|
| 12/31/70-73 | Buckeye Union |
| 12/31/73-76 | Buckeye Union |
| 12/31/76-78 | Continental Cas. Co. |
| 12/31/78-79 | Continental Cas. Co. |
| 12/31/79-1/31/80 | Continental Cas. Co. |
| 2/1/80-81 | Fireman's Fund |
| 2/1/81-84 | Aetna |
| 2/1/84-86 | INA Ins. Co. of Ohio |

In 2014 and 2015, after Beckett tendered the underlying asbestos lawsuits, Fireman's Fund, ACE, and CNA agreed to defend Beckett under reservation of rights on a pro rata, time-on-risk basis. (*Id.*, ¶ 20-24). The insurers entered into a cost-sharing agreement, under which CNA paid 62.69% of Beckett's defense and indemnity costs; ACE paid 31.09%, and Fireman's Fund paid 6.22%. (*Id.*, ¶ 25-26). Beckett was aware of, and tacitly agreed with, the cost-sharing agreement of its insurers. (*Id.*, ¶25) (alleging that the insurers "discharged their defense and indemnity obligations" to Beckett via the cost-sharing agreement).

Then, in November 2017, without notice or consent from the other insurers, Beckett settled with CNA, and released any claim for coverage under the CNA policies that had been in effect for almost ten years. CNA paid Beckett a substantial sum as part of the settlement.[3] Despite receiving a confidential substantial payment, and despite the fact that CNA had been paying the majority (62.69%) of Beckett's defense and indemnity expenses, Beckett then demanded that Fireman's Fund and ACE pick up CNA's share. The Complaint alleges:

---

Casualty Company – are members of the CNA group of insurance companies, and Beckett refers to them collectively in the Complaint as "CNA". (Doc# 1, PageID 4, ¶11, FN 5).

[3] The settlement agreement is confidential. Therefore, the amount of the consideration is not specifically referenced. However, a copy of the settlement agreement is filed separately under seal with this Court pursuant to the parties' Stipulated Protective Order (Doc. 28) and included in this Motion as Ex. A.

4

> 29. R.W. Beckett has advised [Fireman's Fund and ACE] (sometimes collectively hereinafter the "Non-Settling Insurers") that the CNA Policies have exhausted and has instructed the Non-Settling Insurers to reallocate their respective percent shares of R.W. Beckett's defense and indemnity obligation for the Asbestos Claims, to reflect that the Non-Settling Insurers are now responsible for funding 100% of R.W. Beckett's defense and indemnity obligation for the Asbestos Claims.

Thus, Beckett claims that it can eliminate 62.69% of its insurance coverage, get paid a large amount for doing so, and simply walk away without contributing a nickel toward defense and indemnity for its asbestos claims. But as discussed below, the law says otherwise. Despite this, Beckett asserts claims for breach of contract, declaratory judgment, and bad faith. These claims are all without merit, such that Fireman's Fund is entitled to summary judgment.

### **The Fireman's Fund Policy**

Fireman's Fund insured Beckett for a single year (from February 1, 1980 until February 1, 1981). (Complaint, Doc# 1, ¶12). Pertinent portions of the policy are attached to the Complaint as Ex. D. (Doc# 1-4). The insuring agreement in Fireman's Fund's general liability form provides (Id., PageID 64):

> **COVERAGE A—BODILY INJURY LIABILITY**
> **COVERAGE B—PROPERTY DAMAGE LIABILITY**
>
> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> Coverage A. **bodily injury** or
> Coverage B. **property damage**
>
> to which this insurance applies, caused by an **occurrence,** and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such **bodily injury** or **property damage,** even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

5

The general liability form sets forth the following exclusion (Id., PageID 65):

> This insurance does not apply: . . .
>
> (f) to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

Thus, the Fireman's Fund policy excludes coverage for injuries caused by toxic chemicals and other irritants and contaminants. Asbestos is certainly one such substance, as numerous courts have held.

The nature of asbestos claims is that they involve long-term exposure to asbestos, often during the plaintiff's employment, such that the exposure is not "sudden" (as to fall within the "sudden and accidental" exception to the pollution exclusion). *See, e.g.*, *William Powell Co. v. OneBeacon Ins. Co.,* 1st Dist. No. C-160291, 2016-Ohio-8124 (1st Dist.) (involving asbestos exposures over decades). If Beckett contends that the exposure was "sudden and accidental" such that the exception applies it has the burden to so prove. *Northville Industries Corp. v. National Union Fire Ins. Co.*, 89 N.Y.2d 621, 679 N.E.2d 1044, 657 N.Y.S.2d 564 (1997); *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 28 F. Supp. 2d 440, 444 (E.D. Mich. 1998).

### The Pollution Exclusion Precludes Coverage

The weight of authorities from Ohio and the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") have recognized that asbestos is a toxic chemical, such that claims alleging injury from asbestos fall within a pollution and toxic substance exclusion (often referred to as a pollution exclusion, but equally applicable to toxic chemicals and other irritants and contaminants, like asbestos).

6

In *Selm v. American States Ins. Co.*, 1st. Dist. No. C-010057, 2001 WL 1103509, the plaintiffs sued a flooring contractor for improperly removing vinyl flooring in a manner that resulted in the dispersal of asbestos-containing dust throughout the home. The contractor sought coverage from its insurer, which denied coverage under a pollution exclusion and sought a declaratory judgment. The pollution exclusion applied to injury arising out of the "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants," and defined "pollutant" in pertinent part as meaning "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalize, chemicals and waste." The court of appeals found the exclusion to be unambiguous, and to preclude coverage for the plaintiffs' claim:

> There is no doubt that asbestos is an irritant or contaminant, and therefore a pollutant under the policy. Asbestos is a hazardous substance under the Comprehensive Environmental Response Compensation and Liability Act. It is a toxic pollutant under the Water Pollution Control Act. It is also a hazardous air pollutant under the Clean Air Act. An entire section of the Ohio Revised Code addresses asbestos abatement.
>
> Courts have specifically found asbestos to be a pollutant under federal law, and have construed it as a pollutant under similar insurance policies . . .
>
> > We would be doing a disservice to the English language if we were to say that asbestos fibers, which are a health hazard because of their irritant effects on the human body, were not an irritant. (citations omitted).

*Id.*, at *3. The court approved of other courts' findings that "friable asbestos unquestionably fell within the category of a solid or thermal 'irritant' or 'contaminant' and that the exclusion clearly applied to the release of pollutants." *Id.*, at *4. *See also GrafTech Int'l, Ltd. v. Pacific Employers Ins. Co.*, 8th Dist. No. 105258, 2017-Ohio-9271, ¶1 (applying Ohio law to hold that pollution exclusion barred workers' claims for on-the-job exposure to chemicals from insured's products during manufacturing process).

7

Importantly, a long line of decisions from the Sixth Circuit has held similarly under Ohio law.  For instance, in *See Whitt Machine, Inc. v. Essex Ins. Co.*, 377 Fed. Appx. 492, 500 (6th Cir. 2010), the Sixth Circuit held, under Ohio law, that a policy's pollution exclusion barred coverage for the costs of asbestos clean-up after a fire. The court said:

> The Endorsement states that it "does not cover loss or damage caused directly or indirectly by the release or discharge or dispersal of toxic or hazardous substances, contaminants, or pollutants." We find that this language excludes coverage because the loss or damage here was caused, at least in part, directly or indirectly, by the release, discharge or dispersal of asbestos. The fire was also a cause of the loss or damage. However, the fact that the fire was also a cause of the damage does not mean that the Endorsement does not apply.

377 Fed. Appx. at 500.  *See also Park-Ohio Industries, Inc. v. Home Indem. Co.*, 975 F.2d 1215, 1216 (6th Cir. 1992)(applying Ohio law to find that pollution exclusion barred coverage for workers' claims for exposure to chemicals in insured's products); *U.S. Fidelity & Guaranty Co. v. Jones Chemicals, Inc.*, 194 F.3d 1315, 1999 WL 801589 (6th Cir. Sept. 27, 1999), at *1-2 (applying Ohio law to find that pollution exclusion barred coverage for worker's claims for exposure to chemicals in insured's products); *Manufacturers Gasket Co. v. Transcontinental Ins. Co.*, 9 F.3d 1548, 1993 WL 468905 (6th Cir. Nov. 12, 1993), *1 (applying Ohio law to find that products liability suits against insured were barred by pollution exclusion).

Other courts have reached the same conclusion, See, e.g., *Am. States Ins. Co. v. Zippro Constr. Co.*, 216 Ga. App. 499, 500-01, 455 S.E.2d 133, 135 (1995), cert. dismissed (Ga. May 15, 1995) (pollution exclusion bars coverage for injury or damage resulting from the release of asbestos fibers during repair of floor); *American Heritage Realty Partnership v. La Voy*, 209 A.D.2d 749, 750-51, 618 N.Y.S.2d 125, 126 (3d Dep't 1994) (asbestos constitutes a "pollutant" and therefore the pollution exclusion bars coverage for asbestos property damage claim); *Yale Univ. v. Cigna Ins. Co.*, 224 F. Supp. 2d 402, 423-24 (D. Conn. 2002) ("the policies' contaminant

8

exclusion clearly and unambiguously precludes coverage for [the insured]'s asbestos-related claims"); *Cincinnati Ins. Co. v. German St. Vincent Orphan Assoc.*, 54 S.W.3d 661, 666 (Mo. Ct. App. 2001) (release or discharge of asbestos falls within exclusion); *Zurich Am. Ins. Co. v. Insurance Co. of N. Am.*, 2019 WL 2184973 (E.D. Mo. May 21, 2019), at *8 (pollution exclusion that is indistinguishable from Fireman's Fund's pollution exclusion unambiguously barred coverage for an asbestos bodily injury claim).

Hence, the Court should enter summary judgment for Fireman's Fund on Beckett's breach of contract and declaratory judgment claims, based on the pollution exclusion.

**Fireman's Fund Is Entitled To A Credit Equal To The Limits Of The Settled Policies**

Before Beckett settled with CNA, everything was working smoothly. Fireman's Fund, ACE, and CNA had an agreement to share defense and indemnity expenses on a pro rata, time-on-risk basis, with CNA paying 62.69%. The underlying assumption of this agreement was that all of the insurers' policies were triggered by the asbestos claims against Beckett. If Beckett elected to "target" any one of the insurers to pay 100% of defense and indemnity for the claims, then the targeted insured would have an equitable right of contribution from the other triggered insurers that would likely result in each insurer be liable for its time-on-risk. *See Pa. Gen. Ins. Co. v. Park-Ohio Industries*, 126 Ohio St.3d 98, 2010-Ohio-2745, ¶¶11-12 (explaining allocation and contribution between triggered insurers with respect to long-tail asbestos claims).

Against this background, Beckett settled with CNA without notice to or consent from Fireman's Fund. Thereafter, Beckett commenced this suit to, among other things, obtain judicial rulings that Fireman's Fund was "not entitled to equitable contribution from CNA" and was "not entitled to any settlement credits" for the CNA settlement. (Doc# 1, PageID 9, ¶¶37-38). Why?

9

Because under the settlement agreement with CNA, Beckett is required to defend and indemnify CNA against any contribution claims made by Fireman's Fund or other insurers. (Ex. A).

Thus, when Beckett settled with CNA, Beckett knew that it was eliminating 62.69% of the funding for future defense and indemnity obligations and would be obligated to pick up CNA's share if any other insurer sued CNA for contribution. In order to avoid this obligation, Beckett brought this lawsuit seeking a judicial determination that Fireman's Fund is not entitled to equitable contribution from CNA. This is problematic for Beckett because *Park-Ohio* forbids insureds from engaging "in tactics to delay or obstruct the targeted insurer in the process of obtaining contribution from nontargeted insurers." 2010-Ohio-2745, ¶19. Rather than step into CNA's shoes and assume its portion of the defense and indemnity liability, however, Beckett seeks to simply pocket CNA's payment and walk away (contending that the remaining coverage block would "collapse" and the remaining insurers would have to pick up CNA's share). Thus, Beckett wants Fireman's Fund and ACE to pay 100% of the future defense and indemnity obligations – thereby profiting at Fireman's Fund's (and ACE's) expense. As should be readily apparent, there is something wrong with this picture. Beckett certainly has the right to settle with CNA, but not at the expense of its other insurers. Controlling legal authority (as well as common sense and fairness) hold that vis-à-vis Beckett's other insurers, Beckett, CNA, or both remain responsible for CNA's share of Beckett's defense and indemnity.

While an insured seeking coverage from multiple insurers for the same claims can individually settle with any one of its insurers, Ohio law does not allow such settlements to come at the expense of the non-settling insurers. The Supreme Court of Ohio expressly so held, in an analogous context, in *Fulmer v. Insura Prop. & Cas. Co.*, 94 Ohio St.3d 85, 2002-Ohio-64, 760 N.E.2d 392. There, the plaintiff was injured in an auto accident, for which the tortfeasor had

liability limits of $50,000. The plaintiff elected to settle with the tortfeasor for only $37,500, and to proceed against her own underinsured motorist carrier, Insura, for more money. Insura's policy required exhaustion of the tortfeasor's limits, however, before it had to pay. Insura therefore contended that the settlement for less than the tortfeasor's limits barred underinsured motorist coverage. The Ohio Supreme Court held that the plaintiff could settle with the tortfeasor for less than policy limits and still pursue underinsured motorist coverage, but only for those amounts *in excess of the tortfeasor's full limits*.  94 Ohio St.3d at 96.  The Court held::

> 2. An insured satisfies the exhaustion requirement in the underinsured motorist provision of her insurance policy when she receives from the underinsured tortfeasor's insurance carrier a commitment to pay *any* amount in settlement with the injured party retaining the right to proceed against her underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's available policy limits.

*Id.,* at paragraph two of the syllabus.  Thus, *Fulmer* stands for the proposition that an insured may settle with one of several insurers, but cannot increase the non-settling insurers' liability by doing so. Beckett's position here is contrary to this fundamental principle.

Courts have reached the same conclusion in the context of toxic tort claims (like asbestos and pollution claims) that trigger multiple insurance policies over multiple years. Nationally, the leading case is *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440 (3d Cir. 1996), where the insured sought coverage from its primary and excess liability insurers for property damage caused by its pollution. The insured settled with several primary insurers, leaving only excess insurers as defendants. The district court found the excess insurers liable for the full amount of the claim, and refused to reduce the verdict to account for the prior settlements. The Third Circuit reversed, and held that the non-settling insurers were entitled to a credit equal to the settling insurers' apportioned shares of liability. The court reached this conclusion based on the principle of indemnity, which bars an insured from collecting more than its loss, and despite governing

11

Pennsylvania law holding that where a loss triggers multiple policies each insurer is jointly and severally liable for the full amount of the loss. The court explained:

> We begin with the principle of indemnity, a fundamental principle of insurance law which prohibits insurance contracts from conferring a benefit greater than the insured's loss (i.e., a "double recovery"). *See, e.g., J.H. France,* 626 A.2d at 508 (stating principle that insured "cannot collect more than it owes in damages") (quoting *Keene,* 667 F.2d at 1050); Keeton & Widiss, *supra* §3.1(a), at 135. We must apply this principle of indemnity - barring recoveries greater than losses—in conjunction with the *J.H. France* rule—holding that where multiple insurance policies are triggered to cover an indivisible loss, each insurer may be called upon to cover the entire loss up to policy limits. *J.H. France* does *not,* of course, hold that an insured, having recovered part of its loss from one insurer, can recover an amount equal to its entire loss from another.

98 F.3d at 1452. In order to avoid a double recovery that would violate the principle of indemnity, the court concluded that the non-settling insurers must either be entitled to a credit for the settling insurers' share of liability, or be entitled to contribution from the settling insurers. It opted to allow settlement credits, because allowing contribution "would defeat the finality of the settlement." 98 F.3d at 1453. The court concluded:

> Because we cannot permit a double recovery, and because several insurers have already paid money to Koppers in complete settlement of Koppers' claims against them, we must either (1) reduce the judgment to account for the settling insurers' apportioned shares of liability, or (2) permit the non-settling insurers to seek contribution from the settling insurers and, in turn, permit the settling insurers to seek reimbursement from Koppers. We predict that the Pennsylvania Supreme Court would choose the former rule: reducing the judgment to account for the settling insurers' apportioned shares of liability. That is, we predict that the supreme court would adopt the "apportioned share set-off rule."

98 F.3d at 1452. The court reached this conclusion despite the "joint and several liability" rule adopted in Pennsylvania (and Ohio).[4]

---

[4] See *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, first syllabus ("When a continuous occurrence of environmental pollution triggers claims under multiple primary insurance policies, the insured is entitled to secure coverage from a

12

Courts from this district and the Sixth Circuit have universally applied *Koppers'* analysis in multiple analogous cases. For instance, in *GenCorp, Inc. v. AIU Ins. Co.*, No. 1:02CV1770 (N.D. Ohio July 23, 2003) (Doc#95 in *GenCorp*), the district court, in a case involving long-tail pollution claims, applied *Fulmer* and *Koppers* as the national majority rule (*GenCor*p, Doc# 95, PageID 606, FN3) and summarized the application as follows: "The principle underlying the holding is that an insured may settle a claim for less than the amount maximally obtainable from the responsible party, but the insurer's obligation to pay the insured is the same as though insured had received the maximally obtainable amount." (*Id.*, PageID 606). A subsequent iteration of *GenCorp* (decided just a few months later) found that because the insured's settlement with its primary insurers did not reach the threshold for attachment of the insured's excess policies, the excess policies could not be triggered (or attached). The result attained because although the insured was permitted to settle its primary insurers for any amount it wished, the excess insurers were entitled to treat the primary insurance layer as if it fully applied. Because the primary insurance layer had not been exhausted (and never could be), the excess insurers were not liable to the insured. *See GenCorp., Inc. v. AIU Ins. Co.*, 297 F. Supp. 2d 995, 1007-1008 (N.D. Ohio 2003). The Sixth Circuit affirmed. 173 Fed. Appx. 732 (6th Cir. 2005).

Similarly, in *Bondex Int'l, Inc. v. Hartford Acc. and Indem Co.*, No. 1:03CV01322, 2007 WL 405938 (N.D. Ohio Feb. 1, 2007), *aff'd* 667 F.3d 669 (6th Cir. 2011), which involved coverage for the insureds' asbestos liabilities, one insurer, Colony, settled with the insureds, and non-settling insurers then sued Colony for contribution. The court rejected the contribution claim, as it would undermine the finality of Colony's settlement and would be contrary to the general rule

---

single policy of its choice that covers "all sums" incurred as damages "during the policy period," subject to that policy's limit of coverage.")

encouraging settlement. But the court further held that the non-settling insurers were protected by allowing settlement credits. Citing *Koppers*, the court explained:

> Century, McKinley, Continental, Columbia and Allstate are still protected, to the same degree they were before, by the terms of their insurance policy contracts with RPM, Bondex and Republic. Century, McKinley, Continental, Columbia and Allstate are also able to assert that the settlement from Colony should reduce whatever award is made against them, to ensure that the risk of settling too low remains where it should be – on RPM, Bondex and Republic…. Or, more importantly, if the limits of the Cardinal-issued policies would not have been exhausted for the same reasons that RPM, Bondex and Republic now argue that the defendants' insurance policies are not exhausted – if the amount Cardinal/Colony should have paid is unlimited, in the way that there are no limits to the amount that plaintiffs allege the defendants must indemnify RPM, Bondex and Republic for Reardon related claims – then the plaintiffs would have settled their claims against Cardinal/Colony for far less than they were worth and would accordingly bear that risk, and could conceivably owe defendants for the amounts they paid, that Cardinal/Colony should have paid, but which the plaintiffs negotiated away.

*Id*., at *4. The court therefore entered summary judgment for Colony on contribution, finding that the non-settling insurers could be protected by allowing settlement credits.

Similar reliance upon *Koppers* has been approved in multiple other decisions from the Sixth Circuit and this District applying Ohio law. *See e.g. OneBeacon Am. Ins. Co. v. Am. Motorists Ins. Co*., 679 F.3d 456, 462-464 (6th Cir. 2012); *IMG Worldwide v. Westchester Fire Ins. Co*., No. 1:11 CV 1594, 2015 WL 5093428 (N.D. Ohio Aug. 28, 2015), at *6, *aff'd by* 704 Fed. Appx. 592 (6th Cir. 2017); *Elliott Co. v. Liberty Mut. Ins. Co*., 434 F. Supp. 2d 483, 500 (N.D. Ohio 2006).

In the captioned matter, Beckett tacitly approved of the pro-rata, time-on-risk cost sharing agreement entered between its insurers. Under this arrangement, Beckett received 100% of defense and indemnity costs paid in percentages by its various insurers. However, when Beckett settled with CNA, Beckett was fully paid for CNA's share. Fireman's Fund's share is not increased

14

by the settlement, but remains the same because Fireman's Fund is entitled to a credit equal to the full amount of the settled CNA policies. In short, Beckett cannot have it both ways. It cannot reap the benefit of a settlement with CNA while requiring Fireman's Fund to pick up any shortfall in that settlement.

Hence, should the court find that the pollution exclusion does not completely bar coverage, Fireman's Fund is still entitled to a credit equal to the full limits of the settled CNA policies before it owes any further payment. The net effect of such a holding is that Fireman's Fund would continue to participate in defense and indemnity at its current rate (unless this Court finds that coverage is barred by the pollution exclusion).

## Beckett's Bad Faith Claim Is Without Merit

Fireman's Fund never denied coverage for Beckett's asbestos liabilities. It paid an agreed percentage of the claims until Beckett settled with CNA and then unreasonably refused to use any portion of the amount received from CNA toward the asbestos claims that CNA had been paying. At the very least, Fireman's Fund's coverage position is reasonably justified, as to preclude liability for bad faith.

Under Ohio law, the test of bad faith is not whether the insurer's coverage decision was correct, but whether the decision was reasonably justified. *Thomas v. Allstate Ins. Co.,* 974 F.2d 706, 711 (6th Cir. 1992). Thus, the question is whether Fireman's Fund's coverage position was reasonably justified. Quite plainly it was, as explained above.

Extra-contractual compensatory damages are not recoverable against an insurer in Ohio unless the insurer has breached its duty to act in good faith. As the Ohio Supreme Court pointed out in *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983), an insurance company does not "automatically expose itself to an action in tort" even for compensatory damages even when it denies a claim of its insured:

15

> Mere refusal to pay insurance is not, in itself, conclusive of bad faith. But when an insurer insists that it is justified in refusing to pay a claim of its insured because it believed that there was no coverage of the claim, ". . . such a belief may not be an arbitrary or capricious one. The conduct of the insurer must be based on circumstances that furnish reasonable justification therefor."

6 Ohio St.3d at 277. *Accord*, *Zoppo v. Homestead Ins. Co*., 71 Ohio St.3d 552, 644 N.E.2d 397 (1994); *Helmick v. Republic-Franklin Ins. Co*., 39 Ohio St.3d 71, 529 N.E.2d 464 (1988) (both approving and following *Hoskins*).

The Ohio Supreme Court addressed the issue of when summary judgment should be granted to an insurer on an insured's bad faith claim in *Tokles & Son, Inc. v. Midwestern Indem. Co.,* 65 Ohio St.3d 621, 605 N.E.2d 936 (1992). There, the insured sued its insurer for breach of contract and bad faith, and the insurer moved for partial summary judgment on the bad faith claim. The Court held:

> Therefore, to grant a motion for summary judgment brought by an insurer on the issue of whether it lacked good faith in the satisfaction of an insured's claim, a court must find after viewing the evidence in a light most favorable to the insured, that the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim. . . . To withstand a motion for summary judgment in a bad faith claim, an insured must oppose such a motion with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification for refusing the claim.

*Tokles & Son,* 605 N.E.2d at 943.

An insurer cannot be found liable for bad faith unless the insured proves that the insurer breached the insurance contract.[5] Thus, in *Werner v. Progressive Preferred Ins. Co.*, 533 F. Supp. 2d 776, 783 (N.D. Ohio 2008), the court explained:

> A plaintiff may bring a claim for the tort of bad faith as a separate action, apart from an insured's action alleging breach of contract. *Mid-American Fire & Cas. Co. v. Broughton*, 154 Ohio App. 3d 728, 735, 2003 Ohio 5305, 798 N.E.2d 1109 (2003). A bad faith cause of action arises when an insurer: (1) intentionally refuses to satisfy an insured's claim without lawful basis; or (2) without reasonable justification, fails to determine whether its refusal had a lawful basis. *Id*. While the success of plaintiff's contract claim determines the first theory's viability, plaintiff may assert the second as an independent tort. *Id.*
>
> Werner cannot prevail on a bad faith claim as to either of his theories. Progressive's conduct comported with the insurance policy and, therefore, was not unlawful. It did not involve a denial of coverage; thus, it cannot be charged with having failed to conduct a reasonable investigation before denying coverage.

The same principles and conclusion pertain here. Fireman's Fund did not "intentionally refuse" to satisfy Beckett's asbestos claims – it paid the claims. Since Fireman's Fund has not breached the insurance contract, and since Fireman's Fund's coverage position is at the very least reasonably justified, Beckett's bad faith claim fails as a matter of law.

Numerous Ohio courts – including the Sixth Circuit and several district courts under Ohio law – have held that the insurer's breach of contract is a prerequisite to bringing a bad faith claim. *See, e.g., Gehrisch v. Chubb Group of Ins. Cos.,* 645 Fed. Appx. 488 (6th Cir. 2016) (if the insured's breach of contract claim fails so does his bad faith claim); *Bolton v. State Farm Fire & Cas. Co.*, No. 3:16 CV 220, 2017 WL 5132732 (N.D. Ohio Nov. 6, 2017) ("Where a policy does not cover a claim, it cannot be bad faith to refuse to cover it."); *Wright State Physicians, Inc. v.*

---

[5] Even a breach of contract does not establish bad faith, however. If an insurer has a reasonable basis for its position it has not acted in bad faith, even if its position turns out to be wrong. *Thomas v. Allstate*, 974 F.2d 706, 711 (6th Cir. 1992)

*Doctors Co.,* 2d Dist. 27084, 2016-Ohio-8367 (no bad faith without coverage); *Sanders v. Nationwide Mut. Ins. Co.,* 8th Dist. No. 99954, 2014-Ohio-2386, ¶54 ("since the initial factual prerequisite to Sanders's bad faith claim is lacking, summary judgment in favor of Nationwide was appropriate."); *Taylor v. State Farm Fire & Cas. Co*., No. 3:11-CV-1714, 2012 WL 1643877 (N.D. Ohio May 10, 2012), *4 ("Where a policy does not cover a claim, it cannot be bad faith to refuse to cover it."); *Ho v. State Farm Fire & Cas. Co.*, 8th Dist. No. 86217, 2005 WL 2600651, ¶21 ("There is no basis for a bad faith claim, when the claim is specifically excluded by the policy."); *Boughan v. Nationwide Property & Cas. Co.*, 3rd Dist. No. 1-04-57, 2005-Ohio-244, ¶19 ("The Boughans also argue that Nationwide breached a good faith duty to handle their claim. This argument is precluded by our holding that the damage was not covered under the homeowner's policy."); *Bob Schmitt Homes, Inc. v. Cincinnati Ins. Co*., 8th Dist. No. 75263, 2000 WL 218379, *4 ("The rule announced in *Zoppo* presupposes that the insured is entitled to coverage in the first instance."); *Pasco v. State Auto. Mut. Ins. Co*., 10th Dist. No. 99AP-430, 1999 WL 1221633 (squarely rejecting the contention that there can be bad faith without coverage).

Fireman's Fund did not breach its insurance contract. Hence, a fundamental prerequisite for suing Fireman's Fund for bad faith is absent here.

## Conclusion

Beckett's claims against Fireman's Fund are without merit. Fireman's Fund's pollution exclusion bars coverage for injury arising from exposure to toxic chemicals, irritants, or contaminants, any one of which encompasses asbestos. Thus, Fireman's Fund has been paying (under reservation of rights) claims it does not even owe. In addition, even without the pollution exclusion, Fireman's Fund is entitled a credit equal to the full limits of the settled CNA policies before it owes anything further—effectively leaving its current pro rata share in place on pending

and future claims. And since Fireman's Fund did not breach its contract and its position is reasonably justified in any event it cannot be liable for bad faith. Hence, Fireman's Fund is entitled to summary judgment on all of Beckett's claims.

## Page Limit Certification

This case has been assigned to the standard track. This motion complies with the page limit in standard track cases.

Respectfully submitted,

*/s/ David L. Lester*

| | |
|---|---|
| Richard M. Garner  (0061734) | David L. Lester (0021914) |
| Collins, Roche, Utley and Garner, LLC | Collins, Roche, Utley and Garner, LLC |
| 655 Metro Place South, Suite 200 | 875 Westpoint Parkway, Suite 500 |
| Dublin, Ohio 43017 | Cleveland, Ohio 44145 |
| Phone: (614) 901-9600 | Direct Dial: (440) 438-3612 |
| Email: rgarner@cruglaw.com | Email: dlester@cruglaw.com |

*Attorneys for Defendant,*
*Fireman's Fund Insurance Company*

## Certificate of Service

I hereby certify that on September 18, 2019 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ David L. Lester*
DAVID L. LESTER (0021914)
Collins, Roche, Utley and Garner, LLC

*Attorney for Defendant*
*Fireman's Fund Insurance Company*